HENRY LEWIS

*v.*

E. B. SHEARER *et al.*

*Opinion filed February 20, 1901.*

1. CONVEYANCES—*in equity, vendee in bond for deed is regarded as the owner of the land.* In equity, upon the execution of a bond for deed and notes for the purchase money, the vendee is regarded as the owner of the land and the vendor the owner of the purchase money, the transaction being considered as in the nature of a mortgage, and treated as though a conveyance had been made to the vendee and a re-conveyance taken back which is capable of assignment.

2. SAME—*effect of assignment of notes by vendor in bond for deed.* The assignment by a vendor in a bond for deed of the purchase money notes carries with them the lien upon the land to secure their payment, and the assignor thereupon ceases to have any interest in the notes and only holds the legal title in trust to secure the purchase money, upon payment of which it is his duty to convey the legal title to the vendee.

3. DEEDS—*when deeds do not pass after-acquired title.* Deeds containing no covenants of warranty, and which expressly limit the estate conveyed to the interest the grantors inherited from their father, do not pass title subsequently inherited by the grantors from their grandfather, who was living when the deeds were made.

4. VENDORS' LIENS—*lien for purchase money on bond for deed is not a vendor's lien.* A vendor's lien is one arising by implication of law and not by contract, and hence the lien of a vendor under a bond for deed is not a "vendor's lien" but a lien created by express contract, and may be assigned and enforced in equity by the assignee.

. APPEAL from the Circuit Court of Pope county; the Hon. A. K. VICKERS, Judge, presiding.

GEORGE SAWYER, for appellant.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the appellant for the partition of twenty-five acres of land situated in Pope county, of which it is alleged he is the owner of the undivided three-fourths and Harry Tatum of the undivided one-fourth part, and that Rudolph Topsico is in

possession thereof. Topsico, and Tatum, by his guardian *ad litem*, answered the bill, denying that the appellant is entitled to the relief prayed for. Ephraim B. Shearer, James E. Shearer and Mary Eads, by leave of court, intervened, and having answered the bill, filed a cross-bill, which was answered by appellant. Upon the hearing the circuit court entered a decree dismissing the original bill and granting the relief prayed for in the cross-bill, from which decree the appellant has prosecuted this appeal.

There is no controversy as to the facts. The land in question, on the first day of September, 1884, was sold by the then owner, Frank M. Tatum, to Rudolph Topsico for the sum of $490. Tatum executed to Topsico a bond, in the usual form, for a deed, and Topsico gave Tatum his three promissory notes for the purchase money, due in one, two and three years from date, bearing interest at six per cent, which notes upon their face show they were given for the purchase money, describing the land. Topsico immediately went into possession under the bond and remained in possession until March 6, 1899. Shortly after the execution of the notes Tatum endorsed and delivered them to John A. Shearer for a valuable consideration. Frank M. Tatum died on the 7th day of August, 1885, leaving Essie Wheeler, Della Sisk, Jennie Martin and Harry Tatum, his children and sole heirs, him surviving. On the 7th day of January, 1897, Essie Wheeler, Della Sisk and Jennie Martin, for the expressed consideration of $75, quit-claimed all their interest in the land to the appellant. On the 23d day of December, 1897, John A. Shearer died testate, leaving Ephraim B. Shearer, James E. Shearer and Mary E. Eads as his children, and Essie Wheeler, Della Sisk, Jennie Martin and Harry Tatum, the children of Georgia Tatum, a deceased daughter, his grandchildren and sole heirs him surviving, and named Ephraim B. Shearer as his executor, who duly qualified. On the 6th day of March, 1899, there remaining a considerable amount due upon the purchase money, in

consideration of the surrender of the notes to him Topsico attempted to convey the land to Ephraim B. Shearer, as executor of John A. Shearer, deceased, and surrendered the possession thereof to him.

The appellant contends that Rudolph Topsico having failed to pay the purchase money when due by virtue of the conveyance of three of the heirs of Frank M. Tatum to him, the bond for a deed was forfeited and he became invested with the absolute title to the undivided three-fourths part of the land, disencumbered of any right, title or interest therein of Rudolph Topsico and John A. Shearer. In a court of equity such contention cannot be sustained. In equity the land upon the execution of the bond and notes became the property of Topsico and the purchase money that of Tatum, and the transaction will be considered in the nature of a mortgage, and treated as though a conveyance had been made to the vendee and a re-conveyance taken back by way of a mortgage which may be sold and assigned, and the assignee may enforce such lien in equity. (*Lombard* v. *Chicago Sinai Congregation*, 64 Ill. 477; *Wright* v. *Troutman*, 81 id. 374; *Hutchinson* v. *Crane*, 100 id. 269; *Church* v. *Smith*, 39 Wis. 492; *Conner* v. *Banks*, 18 Ala. 42 (52 Am. Dec. 209); *Gessner* v. *Palmater*, 13 L. R. A. 187.) In *Lombard* v. *Chicago Sinai Congregation, supra,* on page 481 we say: "The effect of such contract is very different at law and in equity. At law it confers upon the vendee a mere right of action. The estate remains the estate of the vendor and the money that of the vendee. In equity it is otherwise. Here, the estate, from the making of the contract, is regarded as the real property of the vendee, attended by most, if not all, the incidents of ownership, and the purchase money as the property of the vendor." And again, on page 482: "The vendee is to be considered as the trustee of the purchase money for the vendor, who is regarded as trustee of the land for the vendee." In *Wright* v. *Troutman, supra,* on page 378 it is said: "The two notes and

the contract, which are to be considered as one instrument, may be regarded a security in the nature of a mortgage, which may be sold and assigned, and enforced in the name of the assignee by decree in equity." In *Hutchinson* v. *Crane, supra,* on page 274 the court say: "It was held in that case (*Wright* v. *Troutman*) that the holders, by assignment, of notes given for the purchase money of land, where a bond for title had been given by the vendor for the conveyance of the land, might in equity enforce their claim by subjecting the land to its payment. It was there held that notes thus given and a bond executed for a conveyance constituted one instrument, and will be regarded as a security in the nature of a mortgage, by a court of equity, which may be sold by assignment, and the assignee may enforce the lien or mortgage by a bill in equity." In *Conner* v. *Banks, supra,* it is said: "It is a well settled rule that the vendor of real estate who has not executed a deed to the purchaser holds the legal title as a security for the payment of the purchase money; and if he has executed a bond to make title when the purchase money is paid, the contract, in a court of equity, will be considered in the nature of a conveyance to the purchaser and a re-conveyance back, by way of mortgage. * * * We must consider the right of the vendor in the nature of a mortgage, to which is attached all the equitable rights and incidents of a mortgage intended to secure the payment of the purchase money. As it is clear that Saunders (the vendor) retained a lien on the land in the nature of a mortgage to secure the payment of the purchase money, the transfer of the note to the complainant carried with it the lien, for the note which was given for the purchase money must be considered as the principal and the lien as an incident thereto to secure its payment, and the transfer of the note will necessarily operate as a transfer of the lien."

Upon the consummation of the sale by the execution of the bond and notes Tatum retained a lien upon the

land in the nature of a mortgage to secure the payment of the purchase money. The transfer of the notes to Shearer carried with them the lien, for the notes are the principal and the lien only an incident thereto to secure the payment thereof. After such transfer Tatum ceased to have any interest in the purchase money, and only held the legal title to the land as a trustee for the security of the purchase money, upon the payment of which it would become his duty to convey the legal title to Topsico. At Tatum's death such legal title descended to his heirs. They could only convey to appellant such legal title. At the time the bill in this case was filed the purchase money belonged to Ephraim B. Shearer, as the executor of John A. Shearer, deceased. The equitable title to the land was in Topsico. The legal title thereto was in appellant and Harry Tatum, jointly. Topsico had surrendered the possession and attempted to convey the equitable title to Ephraim B. Shearer, as executor, but failed by reason of a misdescription of the land in the deed to such executor. The purchase money notes, however, had been surrendered to Topsico upon the execution of said deed, and we think the circuit court properly decreed that appellant and Harry Tatum convey the legal title of said lands to Ephraim B. Shearer, as executor of John A. Shearer, deceased, for the benefit of his estate.

It is contended that as Essie Wheeler, Della Sisk and Jennie Martin, as heirs-at-law of John A. Shearer, deceased, will inherit a portion of this land, the court should have decreed such portion to belong to the appellant, otherwise said heirs will receive pay for their land and still retain the land. Such is not the case. The deeds from Essie Wheeler, Della Sisk and Jennie Martin were made to appellant prior to the death of their grandfather, John A. Shearer. They contained no covenants of warranty, and by the express terms thereof were limited to the interest in said lands which the grantors inherited from their father, Frank M. Tatum. Such deeds

did not have the effect to convey to appellant any interest in said land which they might afterwards inherit from John A. Shearer. Appellant by said deeds received only the title which the grantors had in said lands at the time the same were executed, which was the naked legal title to the undivided three-fourths part thereof.

The contention of appellant that a vendor's lien is not assignable, and that John A. Shearer, by the transfer to him of the purchase money notes, took no interest in the land, is without force, as the lien relied upon in this case is not a "vendor's lien." A "vendor's lien" is one arising by implication of law between a vendor and vendee, and not by contract. Here the lien arises by the express contract of the parties, which was transferred and which the assignee may enforce in a court of equity. In *Gessner* v. *Palmater, supra,* the Supreme Court of California in a well considered case say: "It (a "vendor's lien") is the creature of courts of equity, founded upon the equitable presumption that where the vendor has parted with his title and taken no security for the payment of the purchase money the parties intended that the property itself should remain as a pledge for the payment of the purchase price of the land. The lien thus created by implication is not a specific, absolute charge upon the property. It is personal to the vendor, and does not pass by a transfer of his claim for the purchase money. The fee is in the purchaser, and he may defeat the lien by a conveyance to a *bona fide* purchaser for value. * * * Where the vendor holds the legal title under an unexecuted contract for the conveyance of the land upon payment of the purchase money, the transaction shows upon its face that he holds it as security. The vendee can not prejudice that title, or in any way divest it, except by performance of the act for which the vendor holds it. The vendor's security is something stronger than a mortgage, because the legal title is retained as security. * * * Where the title is not to pass until the vendee pays

the purchase price, the land is by express contract held in pledge for such payment, and the notes and contract may be considered as an instrument in the nature of a mortgage. It is a lien by contract, is an incident to the debt, and the assignee of notes given for the purchase money, like the assignee of a note secured by mortgage, is entitled to the benefit of the security."

We find no error in this record. The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*