## JOHN W. DEARING v. J. S. JORDAN ET AL.

### Decided June 30, 1910.

#### 1.—Surety—Change of Obligation—Release.

One who has agreed to become surety for the payment of a debt in monthly installments should be held released when the creditor and the principal debtor enter into a binding agreement, without the consent of the surety, whereby the contract is changed from monthly to yearly payments.  This rule applied in favor of a wife in a case where her separate property was mortgaged to secure a note given by her husband.

#### 2.—Same—Payment of Interest—Binding Contract.

A promise not to enforce the payment of a debt in monthly installments, as required by the original contract, is valid and supported by sufficient consideration when the debtor agrees to pay interest on the entire debt for the full term of the original contract, and such a change in the original contract would operate as a release of a surety upon the original contract.

#### 3.—Same—Loan—Wife's Separate Property.

The wife's separate property being primarily liable for money borrowed and used for the improvement of the same, a deed of trust given by her on her separate property to secure such loan would not be released by a change in the terms of the loan made by her husband without her consent.  And so as to money borrowed and used to pay taxes and insurance on her separate property.

#### 4.—Homestead—Mortgage—Estoppel.

Even though the property upon which a mortgage or deed of trust is given be the homestead, the mortgagee is entitled to a foreclosure upon the husband's interest in the same after the death of the wife when the husband, by his con-

duct and representations in securing the loan, is estopped from setting up the fact of homestead.

#### 5.—Mortgage—Warranty—After-acquired Title.

An after-acquired title or interest by a mortgagor who has warranted the title to the property, inures to the benefit of the mortgagee.

#### 6.—Wife's Separate Estate—Improvements by Husband—Remainderman —Creditor.

Improvements made by the husband upon the wife's separate estate after her death, become a part of her estate and can not be separated therefrom and subjected to a mortgage executed by the husband and wife, to the prejudice of the remainderman in the estate.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Greers & Nall* and *Jas. H. Rachford,* for appellant.—The undisputed evidence showing that the plaintiff paid on March 4, 1904, the sum of $3105.96 to the Fidelity Savings Association, and an additional sum of $176.75, for insurance and taxes, and the jury having found that J. S. Jordan was estopped from disputing said amount as being correct, the deeds of trust and notes having provided for ten per cent on said indebtedness, and ten per cent attorney's fees, the plaintiff was entitled to recover against said J. S. Jordan said amount, interest and attorney's fees less any payments made, and in addition thereto to recover the sums paid for insurance and taxes after he acquired the notes and liens on which suit is brought. Pan Handle Natl. Bank v. Security Co., 61 S. W., 731; Morse v. Clayton, 21 Miss., 373.

An agreement between principals to extend the time of payment of a note or in any way to change the obligation of a note, is a contract, and must be founded on a consideration deemed valuable, and in the absence of such consideration the contract is void. Benson v. Phipps, 28 S. W., 359; Houston v. Braden, 37 S. W., 467.

A contract between the principals that will release a surety must be made in good faith and binding on the parties to it and one that the court can and will enforce against all the parties to the contract, and if not enforcible against one of the parties to it, it is void as to all the parties. Officer v. Marshall, 29 S. W., 246; Bowman v. Humphrey, 37 S. W., 150; Londonville Natl. Bank v. Fletcher, 54 Am. St. Rep., 874; J. M. Guffey Petroleum Co. v. Oliver, 79 S. W., 891; Knight v. Indiana Coal Co., 17 Am. Rep., 692; Eclipse Oil Co. v. South Penn. Oil Co., 34 S. E., 923; Federal Oil Co. v. Western Oil Co., 112 Fed., 373; Marble Co. v. Ripley, 10 Wall, 339.

Where a wife's property is given as surety for her husband's indebtedness, it will be treated as any other surety and can only be released under the same circumstances that a personal surety would be released, and therefore in order for the purported "Memorandum of Loan" or extension to be a release of the property of Sallie A. Jordan, deceased, now belonging to the defendant Lawrence R. Jordan, it must have been

known to the plaintiff at the time of making said extension that said property was a surety, and the burden of establishing this was upon the defendants. Bonnell v. Prince, 11 Texas Civ. App., 399; Zapalac v. Zapp, 22 Texas Civ. App., 375; Victoria First Natl. Bank v. Skidmore, 30 S. W., 564; Coffin v. Loomis, 41 S. W., 511; Burke v. Cruger, 8 Texas, 67; Roberts v. Bane, 32 Texas, 385; Stroop v. McKenzie, 38 Texas, 133; Clark v. Cummings, 84 Texas, 614; Wofford v. Unger, 55 Texas, 480; Dalton v. Rainey, 75 Texas, 520; 1 Brandt on Suretyship and Guaranty, sec. 44 (third edition).

Where a creditor, in granting extension to the principal, expressly or by implication reserves his right against the surety, the latter is not discharged, as such reservation preserves to the surety the right to sue the principal at any time. First Natl. Bank v. Lineberger, 35 Am. Rep., 583; Hagey v. Hill, 15 Am. Rep., 583; Brandt on Suretyship (third edition), secs. 413 and 414.

Where the undisputed evidence shows that the money was borrowed and used for the purpose of paying off liens on the wife's property, the wife is not a surety as to so much of such loan so used, but is a principal. Article 2970, Rev. Civ. Stats.; Evans v. Gray, 86 S. W., 375; Emerson v. Kneezell, 62 S. W., 551; Perkins v. Baker, 38 Texas, 46; Butler v. Robertson, 11 Texas, 71; Cartwright v. Hollis, 5 Texas, 153; Harris v. Williams, 44 Texas, 124; Hawkes v. Robertson, 40 S. W., 548; Vogel v. Leichner, 1 N. E., 554; Fitzpatrick v. Papa, 89 Ind., 17; Cummings v. Martin, 27 N. E., 173, and cases there cited.

It appearing from the undisputed testimony that J. S. Jordan and Sallie A. Jordan, in borrowing the money, represented that the same was to be used for the benefit of the separate property of Mrs. Sallie A. Jordan, and the plaintiff not being advised to the contrary, her separate property is bound by such representations in so far as the plaintiff is concerned, and the court should have so found. Taylor v. Hearn, 31 N. E., 201; Bouvey v. McNeal, 26 N. E., 396; Wertz v. Jones, 34 N. E., 1; Nott v. Thompson, 14 S. E., 940; Bailey v. Seymour, 20 S. E., 62; 1 Randolph on Commercial Paper (2d ed.), sec. 282.

An estate for life in lands is such an interest as may be mortgaged, and the court committed material and reversible error in concluding, as a matter of law, that neither the Fidelity Savings Association nor J. W. Dearing acquired any lien upon the property sought to be foreclosed by the deed of trust executed by J. S. Jordan and wife, Willie M. Jordan, on February 25, 1901, and in refusing to foreclose the same. Penny v. Weems, 139 Ala., 270; Lehndorf v. Cope, 122 Ill., 317; Bryan v. Howland, 98 Ill., 625.

It is a well settled rule of law that a title subsequently acquired by a mortgagor inures to the benefit of the mortgagee and his assigns, by virtue of covenants of warranty in his mortgage and is subject to foreclosure. Iowa Loan Co. v. King, 12 N. W., 595; Stewart v. Powers, 33 Pac., 489; Spies v. Newberg, 37 N. W., 417; Weber v. Laidler, 90 Am.

St. Rep., 726; Clark v. Daniels, 43 N. W., 854; Hale v. Hollon, 35 S. W., 843; Searcy v. Gwaltney Bros., 81 S. W., 576.

The defendant, J. S. Jordan, having a life estate in the land sought to be foreclosed upon, and the first two mortgages containing covenants of warranty, and the last mortgage having been given after the life estate was cast, and the undisputed proof showing that he had, out of his separate property, after the death of his first wife, placed valuable improvements on said property, such improvements would become subject to all of said mortgages, and plaintiff was entitled to have a foreclosure as to the same. Bond v. Hill, 37 Texas, 626; Furrh v. Winston, 66 Texas, 525; Branch v. Makeig, 28 S. W., 1052.

*A. T. Watts, A. J. Duperier, E. E. Easterling* and *J. D. Martin,* for appellees.—The agreement between John W. Dearing and J. S. Jordan on the 8th day of March, 1904, materially changed the terms of the contract upon which Mrs. Sallie A. Jordan, deceased, had been bound as surety, and her property thereby became released from the operation of said mortgage. Westbrook v. Belton Natl. Bank, 97 Texas, 247; Durrell v. Farwell, 88 Texas, 107; Ryan v. Morton, 65 Texas, 260; Lane v. Scott, 59 Texas, 370; Benson v. Phipps, 87 Texas, 581; Clark v. Cummings, 84 Texas, 610.

The contract between Dearing and Jordan purported to bind only them as principals, but if it had reserved any right against Mrs. Sallie A. Jordan, it would not have bound her property, she not being a party to the contract. A married woman can not be estopped by the declarations of her husband. McLaren v. Jones, 89 Texas, 131; Cranfill v. Hayden, 97 Texas, 544.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellant against appellee to recover the amount due upon three promissory notes for the sums of $2500, $1000 and $500,' respectively, and to foreclose a mortgage lien given to secure the payment of said notes upon lots Nos. 657 and 656, and a strip of land 10 feet in width off the north side of lot No. 655 in block No. 26 of the city of Beaumont. Plaintiff also sought to recover certain taxes and premiums for insurance on the property paid by him. The suit is against J. S. Jordan, Lawrence R. Jordan and Willie M. Jordan. The material allegations of the pleadings briefly stated are as follows:

The amended petition upon which the cause was tried alleges in substance that Lawrence R. Jordan was a minor, the son of Mrs. Sallie A. Jordan, deceased; that there had been no administration on her estate, but that J. S. Jordan had qualified as survivor in community of the estate of himself and his deceased wife, Sallie A. Jordan; that Willie M. Jordan was the present wife of J. S. Jordan.

That on July 28, 1899, J. S. Jordan and Sallie A. Jordan borrowed from the Fidelity Savings Association $2500 on stock which they owned in said Association as evidenced by certificate No. 120. To secure this

loan they executed a deed of trust on lots 657, 656 and ten feet off the north side of lot 655 in block 26 of the original town of Beaumont, Jefferson County, Texas; that on December 28, 1899, J. S. Jordan and his wife, Sallie A. Jordan, borrowed $1000 from the Fidelity Savings Association on stock in that Association owned by them, as evidenced by certificate No. 350, and gave a deed of trust to secure said money on the same property as hereinbefore described; that these deeds of trust scured all taxes and premiums on fire insurance paid by the Fidelity Savings Association, or the owners and holders of said indebtedness, and the lien was given on the property hereinbefore described to secure any sums so paid out, which were to bear interest at the rate of ten per cent per annum.

That Sallie A. Jordan died on July 4, 1900, intestate, and left Lawrence R. Jordan as her only heir; that thereafter, on December 2, 1900, J. S. Jordan married the defendant, Willie M. Jordan, and they are now husband and wife; that on February 25, 1901, J. S. Jordan and Willie M. Jordan became the owners of stock in the Fidelity Savings Association as evidenced by certificate No. 1228, and borrowed $500 from that Association to secure which they executed their deed of trust on their interest in the property hereinbefore described.

That on March 8, 1904, plaintiff, at the instance of J. S. Jordan, purchased the notes and liens and paid insurance and taxes due on said notes, being $3106.96, besides taxes and insurance in the sum of $176.75. That subsequently, towit, on January 3, 1906, plaintiff purchased said property at tax sale for taxes, paying therefor $226.11, and also paid $75 insurance, of which $25 had been returned to him, leaving $50 due. Plaintiff sought judgment against J. S. Jordan for all said indebtedness, and a foreclosure upon said property above described; also costs of suit and attorney's fees.

The defendant, Lawrence R. Jordan, by his amended answer filed March 18, 1909, on which he went to trial, after the general demurrer and special exception and general denial, specially denied that J. S. Jordan was ever guardian of his estate or authorized to act for him as guardian of his property, or make any contract for or on his behalf affecting the property in any way. He further alleged the death of his mother and that the property sought to be foreclosed upon was the separate property of his mother; that his mother, Mrs. Sallie A. Jordan, was a surety upon the contracts sought to be foreclosed upon, and her estate being such surety, the plaintiff and J. S. Jordan entered into a new contract, which is attached to his answer, by virtue of which the property sought to be foreclosed upon was released. He also alleges that the contract sought to be foreclosed upon was usurious. He further alleged that at the date of the last deed of trust executed by J. S. Jordan and Willie M. Jordan, they had no interest whatever in said property and no authority to encumber the same with any lien. He further alleged that the property sought to be foreclosed upon was the home-

stead of J. S. Jordan and Sallie A. Jordan at the time of the execution of the deeds of trust sought to be foreclosed.

J. S. Jordan made a similar answer as Lawrence R. Jordan; that is to say, denying that he ever qualified as guardian, claiming that the property was the homestead of himself and his deceased wife at the time of the execution of the deeds of trust sought to be foreclosed for the $2500 and the $1000; that the property was the separate estate of Sallie A. Jordan; that a new contract had been entered into, by and through which the property had been released; that the contract was usurious, and in addition pleaded that of the $2500 borrowed, only $1450 was actually paid him.

The defendant, Willie M. Jordan, wife of J. S. Jordan, in an answer in which she was joined by her husband, pleaded facts similar to those alleged by Lawrence R. Jordan and J. S. Jordan, and, in addition thereto, alleged that at the date of the execution of the deed of trust to secure the $500 loan, towit, on February 25, 1901, the property sought to be foreclosed, upon was the homestead of herself and J. S. Jordan. She alleged that J. S. Jordan had no interest in the property other than his homestead and a life estate in and to an undivided one-third thereof during his natural life.

Plaintiff, by supplemental petition, after the exceptions, answered the plea of homestead asserted by the defendants, alleging that if Sallie A. Jordan and J. S. Jordan, and J. S. Jordan and Willie M. Jordan, had ever occupied the property sought to be foreclosed upon as a home, and the same was ever their home, then the same had been permanently abandoned by them in 1895, when they went upon and occupied T. & N. O. section 86 as their home; that they so represented to the agent of the Fidelity Savings Association at the time the $2500 loan was made, and also at the time of the $1000 loan and the $500 loan; that said loans would not have been made except for said representations that said property was not the homestead of the defendants; that J. S. Jordan was further estopped to dispute the amount due as he represented to the plaintiff that there was due $3106.96 on the notes and $176.75 insurance, and by virtue of said representations plaintiff purchased said notes.

Plaintiff further alleged that in so far as the $2500 was concerned, Sallie A. Jordan and J. S. Jordan had, prior to July 28, 1899, procured various and sundry loans on the property sought to be foreclosed upon, setting them out specifically in his supplemental petition. That the $2500 was borrowed for the purpose of discharging these deeds of trust, and was used for said purpose, and to that extent the property, if it was the separate property of Sallie A. Jordan, was benefited and the same was for the improvement and benefit of her separate property.

The defendants, J. S. Jordan and Lawrence Jordan, both filed supplemental answers to the supplemental petition, alleging more fully a homestead interest in said property sought to be foreclosed upon; that section 86 was not their home, and the claim or interest of Jordan and his wife thereto was such that they could not have had, and did not have, any

homestead interest therein, and that section 86 belonged to the State of Texas, and the bid of J. S. Jordan to purchase the same had been rejected by the State; that they expected to return and occupy the property sought to be foreclosed upon. They denied that any of the $2500 was used to pay off any liens upon the property sought to be foreclosed upon, and also pleaded the two and four years statute of limitations.

The case was submitted to a jury upon special issues and, upon the findings of the jury supplemented by additional findings of fact by the court, judgment was rendered in favor of the plaintiff against J. S. Jordan for the sum of $3822.05, with ten per cent interest thereon from the date of said judgment and an additional ten per cent as attorney's fees, and in favor of the other defendants that plaintiff take nothing as against them, and refusing to establish and foreclose any lien upon the property in controversy, except for the taxes and insurance.

For the purposes of this opinion the following is a sufficient statement of the evidence and of the facts found by the jury and trial court:

The notes sued on and the trust deeds mentioned in the petition were executed as alleged.

At the dates of the execution of the $2500 and the $1000 notes the property described in said trust deeds was the separate property of Mrs. Sallie A. Jordan. There is evidence tending to show that at and before the execution of said trust deeds the property was the homestead of Sallie A. Jordan and her husband, J. S. Jordan. Prior to and at the time of the execution of said instruments and as an inducement to the Loan Company to make said loan, Sallie A. Jordan and J. S. Jordan made written statements declaring that the property was not their homestead, and these statements, taken in connection with the fact that they were then residing upon other property, which they designated in said statement as their homestead, justify, if they do not compel, the finding which was returned by the jury, that said J. S. Jordan and wife, and those claiming under them, are estopped from asserting, as against the holder of said notes and trust deeds, that the property was their homestead at the time said instruments were executed.

Sallie A. Jordan died on July 4, 1900, and the minor defendant, Lawrence R. Jordan, is her only surviving child. J. S. Jordan married the defendant, Willie M. Jordan, on December 2, 1900. At the time of execution of the $500 note by said J. S. and Willie M. Jordan and the deed of trust given by them on the property in controversy to secure said note, they were not living on the property, but there is evidence tending to show that it had never been permanently abandoned by J. S. Jordan as his homestead, and the court so found. The court further finds, upon amply sufficient evidence, that said defendants are estopped from asserting any homestead rights in said property against the holder of said note. Willie M. Jordan signed this note as surety for her husband. A large portion of the money for which the $2500 note was given was borrowed for the purpose of discharging then existing liens upon the

property in controversy, and the evidence shows that one of said liens in favor of H. H. Forward was given to secure money used in making improvements upon said property which was, as before stated, the separate property of Sallie A. Jordan.

On March 8, 1904, defendant, J. S. Jordan, having theretofore made default in the payment of certain installments of principal and interest which had become due upon the notes before described, and all of said notes being then due and payable at the option of the holder thereof, requested the plaintiff to purchase the notes and securities from the Loan Company. Plaintiff complied with this request and the notes were transferred to him by the Loan Company, and the said defendant at the same time executed and delivered to plaintiff the following instrument:

"Memorandum of Loan.—This Memorandum of Loan, made by John W. Dearing to J. S. Jordan, made this 8th day of March, witnesseth:

"That the said John W. Dearing has this day loaned to said Jordan, and at his request has taken over the securities executed by the said J. S. Jordan to the Fidelity Savings Association, as follows, towit:

"First. One deed of trust to secure the payment of $2500, dated July 29, 1899, and recorded in M. & L. Records of Jefferson County, Texas, in vol. 14, pages 112 to 117.

"Second. One deed of trust to secure the payment of $1000, dated December 28, 1899, and recorded in the M. & L. Records of Jefferson County, Texas, in vol. 15, pages 26 et seq.

"Third. One deed of trust, dated February 25, 1901, and duly recorded in the M. & L. Records of Jefferson County, Texas, in vol. 17, pages 167 et seq., said mortgage to secure the payment of $500.

"That the said John W. Dearing has paid to the said Fidelity Savings Association for said loans or securities at the request of the said J. S. Jordan the sum of $3106.96, that he has also, as provided in said deeds of trust, paid the insurance now due and payable on said property described and covered by said deeds of trust, and the sum of $176.75, aggregating in all the sum of $3283.75; that all of said securities held by the said Fidelity Savings Association have been transferred by said Association to the said John W. Dearing by the request of the said J. S. Jordan.

"It is agreed and understood that all payments made by the said Jordan or by any one for him to reduce said loan and pay the same off, shall be applied in the following order: First, to the payment of the last deed of trust herein described, towit, the indebtedness recited in the deed of trust recorded in vol. 17, pages 167 et seq., of the mortgage and lien records of Jefferson County, Texas; and then to the payment of the debt recited above as the second deed of trust; and then to the payment of the first debt recited herein.

"That the said John W. Dearing has agreed to extend the payments on the said indebtedness so that it shall be paid to him as follows, towit: One thousand dollars to be paid in two years from date hereof, and

the balance to be paid in four years from this date; interest to be paid semi-annually from this date, that is, the 8th day of March, 1904. Provided, however, that the failure to pay any installment of interest shall at the election of the said John W. Dearing, or the failure to pay any of the installments of the principal sum to be paid, shall at the election of said John W. Dearing, relieve him of any obligation to extend said payments and the original contracts shall stand in full force and effect as set out and described in said deed of trust.

"It is understood that the said John W. Dearing is to stand in the same position and to have all the rights that the Fidelity Savings Association has or holds by virtue of the deeds of trust as hereinbefore set out and described.

·(Signed)   "J. S. Jordan,
"For self and as guardian for his son,
"Lawrence R. Jordan."

Defendant, J. S. Jordan, failed to make the payments upon said indebtedness as provided in this agreement, and plaintiff, under the terms of said agreement, brought this suit upon the original contracts evidenced by said notes and trust deeds before described.

A discussion in detail of the various assignments presented in appellant's brief is unnecessary and would, we think, be unprofitable, and we will content ourselves with a statement of our conclusions upon the material questions raised by appellant.

We agree with the trial judge in his conclusion that the agreement between J. S. Jordan and the plaintiff, before set out, so materially changed the original contracts as to release any surety upon such contracts who had not consented to such change, and that in so far as the property in question, which was the separate property of Mrs. Sallie A. Jordan, stood as security for the individual debt of J. S. Jordan, the lien given by Mrs. Jordan to secure said debt was released by said change in the provisions of the contract. Under the original contracts the principal of the debt was payable in monthly installments, each installment being one-hundredth part of the principal, and the accrued interest on the whole indebtedness was also payable monthly. Under the agreement made with plaintiff no part of the principal could be paid before two years, and the interest on the whole indebtedness was to be paid every six months. It can not be said that this was not a material change in the contract. It is often much less onerous to pay a debt in monthly installments than to pay the whole amount at the end of the loan period, and one who has agreed to become surety for such payment in installments should be held released when the creditor, by a binding agreement with the principal debtor made without the consent of the surety, places himself in such position that he can not enforce payment in installments in accordance with the contract made by the surety.

The consideration for plaintiff's promise not to enforce the payment of the debt in monthly installments was the promise and agreement of

Jordan to pay interest on the entire debt for two years. This consideration made the agreement valid and binding, and this change in the original contract was material and operated as a release of the sureties upon the original contracts. Lane v. Scott, 57 Texas, 370; Ryan v. Morton, 65 Texas, 260; Durrell v. Farwell, 88 Texas, 107; Westbrook v. Belton Natl. Bank, 97 Texas, 246; Wofford v. Unger, 55 Texas, 480.

The evidence, as before stated, shows that a portion of the money represented by the $2500 note was borrowed by Mrs. Jordan and her husband for the purpose of discharging previous liens on the property. As to the portion of the loan used for this purpose, as well as for the sums expended by plaintiff under the provisions of the deed of trust in paying taxes and premiums for insurance on the property, Mrs. Sallie A. Jordan was not a surety. This money having been borrowed and used for the benefit of her separate property she and the property were primarily liable therefor, and the change in the contract made by plaintiff and the defendant subsequent to Mrs. Jordan's death, did not release the property from the lien securing the money so used, and the trial court should have held the property liable therefor. Sayles' Civ. Stats., art. 2970; Cartwright v. Hollis, 5 Texas, 153; Butler v. Robinson, 11 Texas, 71; Perkins v. Baker, 38 Texas, 46; Evans v. Gray, 38 Texas Civ. App., 442 (86 S. W., 375); Vogel v. Leichner, 1 N. E., 554.

Upon the death of Mrs. Sallie A. Jordan a life estate in one-third of the property vested in defendant J. S. Jordan, and he being estopped from asserting against the plaintiff any homestead rights in the property, plaintiff is entitled to a foreclosure of his lien upon said life interest for all of the indebtedness due by him on said notes.

The deeds of trust given to secure the $2500 and the $1000 notes contain covenants of general warranty, and under the well settled rule that an after-acquired title of a vendor who has warranted the title to the property inures to the benefit of his vendee, the life estate of J. S. Jordan as soon as the title thereto was cast by the death of Mrs. Jordan, became subject to the liens created by said trust deeds.

In so far as the deed of trust to secure the $500 note is concerned, the life estate in J. S. Jordan had vested before the execution of the trust deed and the title thereto was conveyed by the trust deed for the purpose of securing said note.

The defendants being estopped from asserting any homestead rights in the property against plaintiff's claim, there can be no reason in law or in equity for relieving the life estate of J. S. Jordan in the property from liability for the amount due plaintiff on said notes.

The improvements placed upon the property by J. S. Jordan, the life tenant after the death of Mrs. Sallie A. Jordan, can not be made an encumbrance upon the estate of the remainderman, Lawrence R. Jordan, and J. S. Jordan is entitled to no compensation therefor. Clift v. Clift, 72 Texas, 144. Said improvements have become a part of the estate of the remainderman and can not be separated therefrom and held subject to the lien created by said trust deeds, and the only interest

of said J. S. Jordan which can be subjected to such lien is his life estate in one-third of the property.

The finding of the court and jury that defendants were estopped from asserting homestead rights in the property against plaintiff's claim, makes it unnecessary for us to pass upon the question of whether the evidence is sufficient to sustain the finding that the property was the homestead of the defendant J. S. Jordan at the time said trust deeds were executed, and in view of another trial we refrain from discussing the evidence or expressing any conclusion upon this issue.

For the errors before pointed out the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*

Writ of error dismissed for want of jurisdiction.